# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| EDGAR ANTONIO GARCIA SANCHEZ, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:13-cv-02154-JPM-tmp |
| v. | ) | Cr. No. 2:06-cr-20309-JPM-02 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## ORDER TO MODIFY THE DOCKET,
## DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
## DENYING CERTIFICATE OF APPEALABILITY,
## CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
## AND
## DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is the Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended § 2255 Motion"), filed by Movant, Edgar Antonio Garcia Sanchez, Bureau of Prisons ("BOP") register number 21082-076, who is currently incarcerated at the McRae Correctional Institution in McRae, Georgia. (Am. § 2255 Mot., *Sanchez v. United States*, No. 2:13-cv-02154-JPM-tmp (W.D. Tenn.), ECF No. 10.) For the reasons stated below, the Court DENIES the § 2255 Motion, as amended.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 06-20309

On August 10, 2006, a federal grand jury returned an indictment against Sanchez, who was identified only as "Baston," and fourteen co-defendants. (Indictment, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 3 (sealed).) On September 13,

2006, the grand jury returned a superseding indictment against Sanchez and twelve co-defendants. (Superseding Indictment, *id.*, ECF No. 160 (sealed).) On January 30, 2007, the grand jury returned a forty-five-count second superseding indictment against Sanchez and twelve co-defendants. (Second Superseding Indictment, *id.*, ECF No. 300 (sealed).) Count 1 charged that, beginning at a time unknown and continuing through at least on or about August 10, 2006, Alberto Sanchez, Edgar Antonio Garcia Sanchez, Ernesto Azpeitia-Mojica and Franklin Callahan conspired with each other and with other persons to possess with the intent to distribute, and to distribute, an amount in excess of one kilogram of heroin, in violation of 21 U.S.C. § 846. Count 2 charged that, on or about July 30, 2006, Edgar Antonio Garcia Sanchez possessed with the intent to distribute and distributed heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count 3 charged that, on or about June 22, 2006, Edgar Antonio Garcia Sanchez and Ernesto Azpeitia-Mojica, aided and abetted by each other, used a telephone in the possession of Edgar Antonio Garcia Sanchez in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 4 through 7 charged Edgar Antonio Garcia Sanchez and Franklin Callahan, aided and abetted by each other, with using a telephone in the possession of Callahan on April 26, 2006 (Count 4), June 24, 2006 (Count 5), June 27, 2006 (Count 6), and August 7, 2006 (Count 7) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 8 through 11 charged Edgar Antonio Garcia Sanchez and Albert Sims, aided and abetted by each other, with using a telephone in the possession of Sims on July 10, 2006 (Count 8), July 15, 2006 (Count 9), July 18, 2006 (Count 10), and July 30, 2006 (Count 11) in committing and in causing

and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 12 to 15 charged Edgar Antonio Garcia Sanchez and Tim Deaton, aided and abetted by each other, with using a telephone in the possession of Deaton on May 4, 2006 (Count 12), May 4, 2006 (Count 13), May 13, 2006 (Count 14), and May 14, 2006 (Count 15) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 16 through 19 charged Edgar Antonio Garcia Sanchez and Dana Childers, aided and abetted by each other, with using a telephone in the possession of Childers on July 19, 2006 (Count 16), July 24, 2006 (Count 17), July 30, 2006 (Count 18), and August 5, 2006 (Count 19) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 20 through 23 charged Edgar Antonio Garcia Sanchez and James Ledes, aided and abetted by each other, with using a telephone in the possession of Ledes on June 23, 2006 (Count 20), July 4, 2006 (Count 21), July 6, 2006 (Count 22), and July 12, 2006 (Count 23) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 24 through 27 charged Edgar Antonio Garcia Sanchez and John Digel, aided and abetted by each other, with using a telephone in the possession of Digel on May 8, 2006 (Count 24), May 10, 2006 (Count 25), May 27, 2006 (Count 26), and August 1, 2006 (Count 27) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 28 through 31 charged Edgar Antonio Garcia

Sanchez and Cary Spain, aided and abetted by each other, with using a telephone in the possession of Spain on April 26, 2006 (Count 28), May 9, 2006 (Count 29), May 12, 2006 (Count 30), and May 14, 2006 (Count 31) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 32 through 35 charged Edgar Antonio Garcia Sanchez and Dennis Coker, aided and abetted by each other, with using a telephone in the possession of Coker on July 6, 2006 (Count 32), July 13, 2006 (Count 33), July 14, 2006 (Count 34), and August 7, 2006 (Count 35) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 36 through 39 charged Edgar Antonio Garcia Sanchez and Kendra Touchstone, aided and abetted by each other, with using a telephone in the possession of Touchstone on June 23, 2006 (Count 36), June 25, 2006 (Count 37), July 10, 2006 (Count 38), and July 30, 2006 (Count 39) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Counts 40 through 43 charged Edgar Antonio Garcia Sanchez and Ronald Eugene Conaway, aided and abetted by each other, with using a telephone in the possession of Conaway on April 20, 2006 (Count 40), April 22, 2006 (Count 41), April 28, 2006 (Count 42), and June 22, 2006 (Count 43) in committing and in causing and facilitating the commission of the distribution of controlled substances and conspiring to distribute controlled substances, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Count 44 charged that, beginning at least from April 2006 through at least August 15, 2006, Edgar Antonio Garcia Sanchez employed, hired, used and persuaded a person under eighteen years of age to possess with the intent to

distribute and to distribute heroin, in violation of 21 U.S.C. § 861(a)(1). Count 45 charged that, beginning at least from April 2006 through at least August 15, 2006, Edgar Antonio Garcia Sanchez possessed a 9 mm Highpoint pistol during and in relation to the drug trafficking crimes with which he was charged, in violation of 18 U.S.C. §§ 924(c)(1)-(2).

Pursuant to an oral plea agreement, Sanchez appeared before United States Magistrate Judge Tu M. Pham on November 1, 2007, to plead guilty to Counts 1 and 44 of the Second Superseding Indictment. (Min. Entry, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 487; Change of Plea Hr'g Tr., *id.*, ECF No. 560.)[1] At the change of plea hearing, the Government summarized what the evidence against Sanchez would have been had he gone to trial on Counts 1 and 44:

> Your Honor, had this matter gone to trial the government would have presented proof to show that beginning in the early months of 2006, an investigation by law enforcement agencies was conducted in the Middle Tennessee District, Nashville in particular, wherein heroin distributors were targeted by law enforcement agencies. A Title 3 investigation by Drug Enforcement Administration and TBI agents were begun. A spin-off investigation took place here in the Memphis area as a result wherein authorization was given by court order from District Court Judge Samuel Mays authorizing wire telephone conversation intercepts on three different numbers from telephone numbers used by this defendant to be intercepted and recorded.

> As a result of these intercepts, Your Honor, individuals were recorded for over, I believe it was approximately a six-month period, numerous individuals involving individuals across the country disclosed that this was a nationwide drug trafficking organization originating from Mexico, trafficking in heroin which was transported from Mexico throughout different states within the United States to include Tennessee, South Carolina, North Carolina, and other states involving various sums of various quantities of heroin. Conversations with this defendant also included two individuals named in the indictment. Uncle Beto was the main contact showing that conversations to include the negotiations and transportation of sums of money as well as quantities of heroin when their quantities were running low. Other conversations were recorded with coconspirators to include Franklin Calahan [sic] wherein this defendant and Franklin Calahan [sic] went to

---

[1] Sanchez consented to have the plea hearing conducted by a magistrate judge. (Change of Plea Hr'g Tr. 5-6, 9, *id.*, ECF No. 560.)

Little Rock, Arkansas in efforts to establish another cell head location to distribute heroin as well as another location where they sent Franklin Calahan [sic] to Jacksonville, Florida to establish another cell location to distribute heroin.

In addition, numerous individuals were recorded calling this defendant on the telephone setting up locations to purchase heroin. These conversations were recorded and numerous locations were also monitored by drug enforcement and TBI agents observing these locations and individuals responding to the telephone calls that were being placed by purchasers of heroin. Individuals would arrive and other individuals who were also part of the drug conspiracy would arrive with balloons of heroin and make the transactions to individuals who were drug addicts and purchase the amounts of heroin over a six-month period.

In one particular incident, Albert Sims was recorded making a telephone call to this defendant setting up a purchase of heroin, set up the location. Agents observed the transaction taking place.

In bringing in Count 44, Your Honor, one of the individuals that made the delivery of heroin on that particular date of July the 30th of 2006 was an individual by the name of Francisco Javier Lopez Zuarte, who was under the age of 18, who traveled to Memphis at the direction of this defendant, who was hired by this defendant because he was 18 years of age, under 18 years of age, excuse me, and was informed by this defendant that because he was under the age of 18 that nothing would happen to him because he was a juvenile or he would spend very little time in custody if he was arrested distributing heroin for the organization. As a result of this meeting that was set up, these individuals met with Albert Sims, distributed the heroin to Albert Sims at the Tiger Mart located at Summer and Graham. This was under observation, as I stated, by the Drug Enforcement Administration and TBI agents. A Memphis police officer was called to stop this individual after the transaction took place, Mr. Sims was arrested, heroin was recovered and arrest was made recovering the heroin from this distribution.

Other calls reflected numerous sales and negotiations about the distribution of heroin across the country. Whenever one area was getting low with heroin, they would negotiate various amounts from across the country to make sure that each place was supplied and was able to continue with their distribution amounts. Had this matter gone to trial the government would have been able to present proof, Your Honor, that the amount during this period of the conspiracy this defendant was involved in was well over 1 kilogram of heroin but less than 10 kilograms of heroin reflected in the indictment. So that's what we submit we would have been able to prove. And I believe I covered the facts in Count 44 as well. Those would have substantially been the facts had this matter gone to trial.

(Change of Plea Hr'g Tr. 23-27, *id.*, ECF No. 560 (sealed).) Sanchez agreed with the Government's factual statements. (*Id.* at 27.)

At a sentencing hearing on August 7, 2008, the Government presented the testimony of various witnesses. (Min. Entry, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 631; 08/07/2008 Sentencing Hr'g Tr., *id.*, ECF No. 661 (sealed).) The sentencing hearing was continued to August 22, 2008, at which time additional testimony was presented by the Government and Sanchez testified on his own behalf. After hearing the proof, the Court sentenced Sanchez to a term of imprisonment of two hundred thirty-five months, to be followed by a five-year period of supervised release. (Min. Entry, *id.*, ECF No. 635; 08/22/2008 Sentencing Hr'g Tr. 177-78, *id.*, ECF No. 662 (sealed).)[2] Judgment was entered on August 25, 2008. (J. in a Criminal Case, *id.*, ECF No. 637 (sealed).)

Sanchez appealed his sentence. (Not. of Appeal, *id.*, ECF No. 643.) On November 13, 2009, the United States Court of Appeals for the Sixth Circuit issued an order granting the Government's motion to vacate the sentence and remand the case for resentencing. *United States v. Sanchez*, No. 08-6068 (6th Cir. Nov. 13, 2009). On remand, the Court conducted a

_____

[2] Sanchez was sentenced to concurrent terms of 235 months on Count 1 and 60 months on Count 44. (Min. Entry, *id.*, ECF No. 635; 08/22/2008 Sentencing Hr'g Tr. 177-78, *id.*, ECF No. 662 (sealed).)

The 2007 edition of the *Guidelines Manual* was used to calculate Sanchez's sentencing range. (PSR ¶ 35.) The oral plea agreement required the Government to stipulate that the base offense level would be no greater than 34, which would represent at least 3 but no more than 10 kilograms of heroin. (Change of Plea Hr'g Tr. 19-22, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 560 (sealed).) After hearing the testimony at the sentencing hearing, the Court found that it was appropriate to sentence Sanchez on the basis of the drug quantity in the plea agreement. (08/22/2008 Sentencing H'rg Tr. 153-54, 182-84, *id.*, ECF No. 662 (sealed).) Sanchez received a two-level enhancement for possession of a firearm, pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G."), a two-level enhancement as an organizer, leader, manager or supervisor in any criminal activity, U.S.S.G. § 3B1.1(c), a two-level enhancement for use of a minor to commit a crime, *id.* § 3B1.4(a), and a two-level reduction for acceptance of responsibility, resulting in a total offense level of 38. Given his criminal history category of I, the advisory sentencing range was 235-293 months.

resentencing hearing on July 20, 2010, at which time Sanchez was sentenced to a term of imprisonment of two hundred ten months, to be followed by a five-year period of supervised release. (Min. Entry, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 694; 07/20/2010 Sentencing Hr'g Tr. 31, *id.*, ECF No. 722.)[3] An amended judgment was entered on July 20, 2010. (Am. J. in a Criminal Case, *id.*, ECF No. 695 (sealed).) The Sixth Circuit Court of Appeals affirmed. *United States v. Sanchez*, No. 10-5878 (6th Cir. Apr. 6, 2012).

On January 20, 2015, Sanchez filed a *pro se* motion seeking appointment of counsel to pursue a two-level reduction in his sentence. (Letter, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 776.) On March 31, 2015, an Assistant Federal Defender entered a notice of appearance on behalf of Sanchez. (Not. of Appearance, *id.*, ECF No. 778.) On May 18, 2015, Sanchez filed a *pro se* motion seeking a reduction in his sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 782. (Mot. Under 18 U.S.C. § 3582, *id.*, ECF No. 779.) On July 9, 2015, Sanchez, through counsel, filed a consent motion pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782. (Def.'s Consent Mot. to Reduce Sentence, *id.*, ECF No. 781.) At a hearing on October 27, 2015, the Court denied Sanchez's *pro se* motion, granted the consent motion and reduced Sanchez's sentence to one hundred sixty-eight months. (Min. Entry, *id.*, ECF No. 787.) An order reducing Sanchez's sentence was entered on October 28, 2015. (Order

---

[3] The Court reduced Sanchez's sentence on Count 1 to 210 months. The 60-month sentence on Count 44 was unchanged. At the resentencing hearing, the Court eliminated the two-point enhancement for use of a minor. The Government also moved that Sanchez receive the maximum three-point reduction for acceptance of responsibility. As a result, Sanchez had a total offense level of 35. The advisory sentencing range was 168-210 months.

Regarding Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), *id.*, ECF No. 790 (sealed).)[4]

## B. Case Number 13-2154

On March 1, 2013, Sanchez filed his *pro se* § 2255 Motion, accompanied by a legal memorandum. (§ 2255 Mot., *Sanchez v. United States*, No. 2:13-cv-02154-JPM-tmp (W.D. Tenn.), ECF No. 1; *see also* Mem. of Law in Supp. of § 2255 Mot., *id.*, ECF No. 1-1.) The sole issue presented in the § 2255 Motion is "WHETHER COUNSEL DAVID S. MEJIA AND COUNSEL STEPHEN R. LEFFLER ERRONEOUSLY DEPRIVED THE PETITIONER TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, DURING THE CRITICAL STAGES OF SENTENCING[.]" (§ 2255 Mot. at PageID 4, *id.*, ECF No. 1; *see also* Mem. of Law in Supp. of § 2255 Mot. at 8-14, *id.*, ECF No. 1-1.)

On September 12, 2013, Sanchez filed a document, titled "PETITIONER: GARCIA'S MOTION/SUPPLEMENT UNDER FED.R.CIV.P. RULE 15, HIS SECTION 2255 PETITION WITH SUPPORTIVE MEMORANDUM OF LAW/AFFIDAVIT VIA: FED.CIV.P. 56(F)," which appeared to be either an amendment to challenge various sentencing enhancements or a second legal memorandum. (Movant's Mot./Supplement under Fed. R. Civ. P. 15, *id.*, ECF No. 5.)

On January 6, 2014, Sanchez filed a motion, titled "PETITIONER: GARCIA'S MOTION REQUESTING A STATUS---REPORT CONCERNING GARCIA'S MOTION

---

[4] Amendment 782 reduced the offense levels assigned in the Drug Quantity Table by two levels. *See* U.S.S.G., Supp. App. C, Amend. 782 (2014). On July 18, 2014, the Sentencing Commission voted to give retroactive application to Amendment 782. *See* U.S.S.G. § 1B1.10(d)-(e). As a result, Sanchez's total offense level was 33 and his guideline sentencing range was 135-168 months.

UNDER SECTION 2255/SUPPLEMENT UNDER FED.R.CIV.P. RULE 15 WITH SUPPORTIVE MEMORANDUM OF LAW[/]SEE GARCIA V. USA, CIVIL ACTION #13-cv-2154-JPM-IMP. [sic] (W.D. Tenn[.]/MEMPHIS)," which sought an order directing the Government to respond. (Pet'r's Mot. for Status, *id.*, ECF No. 7.) On March 20, 2014, Sanchez filed a motion, titled "PETITIONER: GARCIA'S MOTION/AFFIDAVIT IN SUPPORT OF HIS REQUEST FOR THIS COURT TO ORDER THE RESPONDENTS TO ANSWER GARCIA'S 28 U.S.C. SECTION 2255 PETITION & SUPPLEMENT UNDER RULE 15 FED.R.CIV.P.,--WITHIN 30 DAYS OF THIS COURT[']S ORDER UNDER FED.R.CIV.P. RULE 37 MOTION TO COMPEL," which sought a default judgment and summary judgment. (Movant's Mot. to Order Resp't to Answer, *id.*, ECF No. 8.)

In an order issued on July 1, 2014, the Court denied without prejudice leave to amend because the amendment was not filed on the official form, directed that any amendment be filed within twenty-eight days, denied the motion to require the Government to respond as premature, and denied the request for a default judgment and summary judgment. (Order, *id.*, ECF No. 9.)

On July 17, 2014, Sanchez filed his Amended § 2255 Motion, accompanied by a second legal memorandum. (Am. § 2255 Mot., *id.*, ECF No. 10; Mem. of Law in Supp. of Claim 2 in Am. § 2255 Mot., *id.*, ECF No. 10-1.) The Amended § 2255 Motion presents the following issues:

1.    "WHETHER COUNSEL DAVID S. MEJIA AND COUNSEL STEPHEN R. LEFFLER ERRONEOUSLY DEPRIVED THE PETITIONER TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, DURING THE CRITICAL STAGES OF

SENTENCING?" (Am. § 2255 Mot. at PageID 97, *id.*, ECF No. 10; *see also* Mem. of Law in Supp. of § 2255 Mot. at 8-14, *id.*, ECF No. 1-1); and

2.    "The District Court and Government committed reversible Sentencing Error by using a 'Constructively Amended Indictment' to dramatically enhance Garcia's Sentence by the mere preponderance of the evidence low [sic] standard of proof, for charges that were <u>NOT</u> stated in Garcia's Indictment & NOT proven or found beyond a reasonable doubt by a jury, judge or government, violates the Fifth Amendment's Due Process & Sixth Amendment's Jury Trial Right, & both the 5th & 6th Amendment's indictment & notice clauses, which are 'ELEMENTS OF A CRIME' and NOT 'Sentencing Factors' specifically the 10 Offense Level Enhancements & DRUG QUANTITY enhancements . . . violated Garcia's substantial rights" (Am. § 2255 Mot. at PageID 98, *id.*, ECF No. 10; *see also* Mem. of Law in Supp. of Claim 2 in Am. § 2255 Mot., *id.*, ECF No. 10-1).

On November 2, 2015, the Court held a status report on this matter to determine whether Sanchez wanted to pursue his § 2255 Motion in light of the facts that he had received a sentence reduction under Amendment 782 and the issues presented in the Amended § 2255 Motion are intertwined with those in the motion for a sentence reduction. Sanchez advised the Court that he elected to proceed with his § 2255 Motion. (Min. Entry, *id.*, ECF No. 13.)

## II.    THE LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed

in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

"[A] § 2255 motion is not a substitute for a direct appeal." *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal quotation marks omitted). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v.*

*United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotation marks omitted). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has

the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.   ANALYSIS OF MOVANT'S CLAIMS

### A.   Counsels' Alleged Failure to Challenge the Drug Quantity at Sentencing (Claim 1)

In Claim 1, titled "WHETHER COUNSEL DAVID S. MEJIA AND COUNSEL STEPHEN R. LEFFLER ERRONEOUSLY DEPRIVED THE PETITIONER TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, DURING THE CRITICAL STAGES OF SENTENCING?" (Am. § 2255 Mot. at PageID 97, *id.*, ECF No. 10), Sanchez argues that, "during the sentencing phase of August 22, 2008, Counsel Mejia without any objection allowed the District Court to assess or attribute upon the Petitioner between Three Kilograms and Ten Kilograms of Heroin" (Mem. of Law in Supp. of § 2255 Mot. at 9, *id.*, ECF No. 1-1).  Sanchez elaborated:

> Wherefore, it is the Petitioner's position of contending that the record contains insufficient evidence to support the District Court's alleged evidence to support the District Court's alleged calculation of Three to Ten Kilograms of Heroin, specifically, when it is a well known fact that the District court in making this alleged determination failed to properly identify from the particular evidence on which it relied in making this alleged drug calculation.

> In sum, it shall be noted that the District Court imputed this alleged Three to Ten Kilograms determination based on the whole extent of the conspiracy without making any factual findings to support this decision.

> So as a result of the above Counsel Mejia's failure to object to the District Court's actions allowed the Petitioner to be erroneously subjected to a starting base offense level of (34) which was based upon unsupportable as well as unreliable evidence, specifically where the record is devoid of any evidence to establish that the conspiracy involved this alleged amount as no evidence was adduce[d] that the Petitioner was involve[d] in one Kilogram not to mention Three Kilograms of Heroin.

(*Id.* at 11 (citations omitted).)

Sanchez further avers that his attorney was ineffective at the resentencing hearing on July 20, 2010, by failing to object to the Court's use of a base offense level of 34, which corresponded to three to ten kilograms of heroin. (*Id.* at 12.)

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations and internal quotation marks omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[5] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (citations and internal quotation marks omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect

---

[5] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").  Where, as here, a movant contends that his attorney rendered ineffective assistance at a sentencing hearing, prejudice is established where an attorney's deficient performance increased a prisoner's sentence.  *Glover v. United States*, 531 U.S. 198, 202-04 (2001).

The premise of Claim 1—that trial counsel failed to object to the base offense level used to sentence Sanchez—is mistaken.  On April 21, 2008, prior to the sentencing hearing, counsel filed a Sentencing Memorandum that contained extensive objections to the PSR.  (Sentencing Mem., *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 585.)[6]  For example, defense counsel objected to the identification of Sanchez as "Baston," and also objected to ¶ 4 of the PSR, which stated that he participated in the conspiracy in 2005. (Sentencing Mem. at 1-2, *id.*, ECF No. 585.)  Counsel further objected that "[t]he Report fails to identify the Defendant and his two Co-Defendants Francisco and Jose as street-level, bottom-of-the-drug[-]distribution-chain distributors of gram-quantities of heroin to drug addicts." (*Id.* at 3.)

As a result of those and other objections by defense counsel, the Court conducted a two-day sentencing hearing at which extensive evidence was introduced about the Sanchez's role in the conspiracy and the drug quantity properly attributable to him.  After hearing the evidence but before the argument, the Court stated its preliminary findings about drug quantity:

---

[6] A previous version of this document was filed on April 17, 2008.  (Sentencing Mem., *id.*, ECF No. 583 (sealed).)  That filing was misidentified on the docket as a PSR.

The amount is a big issue. There were a lot of drugs coming through. He knew a lot about it, he was in regular communication with members of the family, and he was moving up the ladder. The -- we can talk about the quantity issue a little more, but the at least three kilos seems quite conservative. The organization which he was participating -- and he was hardly a -- he was not a novice, he was in that position, he really did know a lot about what was going on, and they were distributing a tremendous amount of heroin . . . .

(08/22/2008 Sentencing Hr'g Tr. 143-44, *United States v. Sanchez*, No. 2:06-cr-20309-JPM-02 (W.D. Tenn.), ECF No. 662 (sealed).) The Court elaborated that "there's some issue on quantities, but there doesn't seem to be a great deal of issue on quantities. We're talking about a substantial sentence." (*Id.* at 144-45.)

The Government argued that the proof fully supported the base offense level of 34, which corresponded to at least three kilograms but less than ten kilograms of heroin. As the following colloquy indicates, the Court initially agreed with that analysis:

> **MR. KITCHEN:** And there was -- and because of this being, as he even testified to, a nationwide drug conspiracy, he's really technically under the law involved in the activities of all these individuals. He involved himself in a drug conspiracy knowing that all these individuals were --
>
> **THE COURT:** That's why I made the observation that we really have to talk about drug quantity because there's a lot of heroin moving through here, and it didn't seem very questionable that it was within the quantity asserted in paragraph 36, it just didn't seem much question at all.[7]
>
> **MR. KITCHEN:** And we brought in Mr. Mabry who testified, I believe, about those seizures in February.
>
> **THE COURT:** Yes, sir.
>
> **MR. KITCHEN:** I think Mr. Mejia has tried to indicate that, well, his involvement only began in April, and we brought on testimony to show, well, yes, he came back in April, however, he was here prior to April. And in his own testimony, he was here in 2005, so he had already joined the conspiracy in 2005. He never exited and -- exited the conspiracy, so he was involved in the conspiracy from 2005 forward, and those seizures that we're talking about occurred in February of 2006 that Mr. Mabry testified to that were directly tied to the

---

[7] Paragraph 36 of the PSR suggested a base offense level of 34.

Nashville operation who the government would submit through the defendant's own testimony is connected to the Memphis operation in this drug conspiracy, so we would submit --

    **THE COURT:**        They were able to move materials, drugs, it appears, back and forth --

    **MR. KITCHEN:**        Yes, sir.

    **THE COURT:**        -- to meet the needs.

    **MR. KITCHEN:**        And we would submit through his own testimony he has directly tied those seizures, and from his involvement in this drug conspiracy that those seizures was well over 11 kilos -- or, excuse me, that all in all, that those seizures involve well over what we have agreed to in the plea agreement.

    **THE COURT:**        Right, and that was what I was trying to suggest was that it seemed to me that the plea agreement was appropriately cautious.

    **MR. KITCHEN:**        Yes, sir.

    **THE COURT:**        In that regard, and in fact, I think that works to the defendant's benefit, and I think it's fine.

    **MR. KITCHEN:**        It did.

    **MR. MEJIA:**        And I believe it is less than ten. Mr. Kitchen just said 11, and I believe the plea agreement says less than 10.

    **THE COURT:**        It says less than 10, and that's why I'm saying, well, let's stay with that number because once we start trying -- when we look at the information we have got, the court was content to stay with the cautious number that was agreed upon by the government and the defense, and I think there are reasons to do that. It's not my objective -- I think we always take the cautious approach in this area, so I'm not going to go up on that, even though it might well be argued and could be supported, but that was agreed upon, I don't think it's unreasonable, we have described the role of the defendant, and that's what I think we ought to do under the facts.

(*Id.* at 152-54.)

Defense counsel emphasized the importance of examining Sanchez's role in the conspiracy:

Here, Your Honor, just putting aside for a moment his activity in 2005, and I think certainly you can look at what that involved and what that showed, but let's look at 2006, we have five months of the very bottom of the drug distribution chain. We have street level gram or fraction gram quantities. The defendant says we dealt, as they call here, pantalones or pants, 10 pant quantities. A pant or pants was 25 grams, 10 is 250. They did this repeatedly. They did it seven days a week, they did it eight hours a day, they were and must be recognized as the very bottom of the drug distribution change [sic]. Now, I know this conspiracy -- and Mr. Kitchen is right, this was a broad conspiracy, it was big, it went from Mexico all the way to the streets of Memphis, but in order to directly assess the defendant, and I'm talking about quantity here and I'm also talking about role and participation and crime . . . .

(*Id.* at 159-60.) The Court reminded defense counsel that, if only a local conspiracy were considered, Sanchez's role would be more significant and, consequently, it might be appropriate to assess more than two points for his role in the offense. (*Id.* at 160.) In response, defense counsel conceded that "I think we have more than a kilo, I think we have three." (*Id.*) Defense counsel argued that Sanchez could not be held accountable for the entire 5.3 kilograms that was seized in Kansas in July 2006 because there was no proof of the amount that was intended for Memphis. (*Id.* at 160-61.) After analyzing Sanchez's role in Memphis and the quantities that were distributed in Memphis, he stated that "I think we're more in the area of closer to three kilos than to 10 kilos." (*Id.* at 162.) Counsel elaborated:

If that's what we're left with, Judge, then that's what we're left with. And essentially Your Honor is going to say I have arrived at a quantity and I believe it is in the area of three to five kilos. I believe based upon calculations of this conspiracy and -- between he and Jose and Chuy, and even -- okay, who is directly above him, is it the cousin in Nashville and he is a purchaser of 250-gram quantities on a regular basis? I think if we took six -- I think if we took one a month or two a month of deliveries, we would get comfortably in the area of three or four kilos, I think maybe that's what Your Honor were to arrive at, but I don't believe it's fair and I don't believe that it is appropriate to -- because we have ironclad evidence of this blanket abroad conspiracy that we're going to put it on his head.

(*Id.* at 161-62.) Defense counsel concluded that

the evidence with regard to quantity isn't strong here, and I don't think it sticks hard. The evidence with regard to quantity of this organization is very great. Mr. Kitchen and his staff --

      **THE COURT:**     Right.

      **MR. MEJIA:**     -- they have done an excellent job here, but on him, Judge, on him, I submit that it should come into the area of three to five kilograms on him. . . .

      **THE COURT:**     And that won't make a calculation difference [because the base offense level would still be 34], but it could make an 18 U.S.C., Section 3553 difference.

      **MR. MEJIA:**     Right.

      **THE COURT:**     I agree with you.

(*Id.* at 166.)

Thus, after hearing the proof and the arguments by counsel, the Court concluded that a base offense level of 34, corresponding to a drug quantity of at least three kilograms and no greater than ten kilograms, was appropriate.[8] The Court took defense counsel's arguments into account when it found that a sentence within the guideline range was appropriate and sentenced Sanchez to two hundred thirty-five months, the bottom of the guideline range. Sanchez has not identified any additional arguments his attorney should have made and has not argued that, if only his trial counsel had advanced those arguments, there is a reasonable probability that he would have received a shorter sentence.

Sanchez also complains that his attorney did not challenge the drug quantity at the resentencing hearing in 2010. The Court of Appeals' November 13, 2009 order was a general

---

[8] The Court further noted that "[i]f the court had been required to find an amount other than accepting the amount as proposed, I would have clearly found it was in excess of 10 [kilograms], we would have had a higher number," but that, due to Defendant's role in the offense, "I gave the defendant in the analytical process the advantage of it being a quantity between three and five kilograms." (*Id.* at 183.)

remand. *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011) ("When a court simply

vacates a sentence and remands for 'resentencing,' or 'resentencing consistent with this opinion,'

that will typically be a general remand."). A general remand authorizes the Court to conduct a

plenary resentencing hearing. *Id.* at 374-75; *United States v. Garcia-Robles*, 640 F.3d 159, 166

(6th Cir. 2011). Had defense counsel raised objections to the drug quantity used to sentence

Sanchez, the Court would have been required to address those objections. Nonetheless, in light

of the evidence introduced at the original sentencing hearing, Sanchez has not specified the

objections his attorney should have made and has not demonstrated that, if only his attorney had

made those arguments, there is a reasonable probability the Court would have found a drug

quantity lower than three kilograms.

Claim 1 is without merit and is DISMISSED.

## B. Counsel's Alleged Failure to Object to Sentencing Enhancements (Claim 2)

In Claim 2, Sanchez argues that his attorney rendered ineffective assistance by failing to

object to sentencing enhancements. Specifically, Sanchez contends that

> [t]he District Court and Government committed reversible Sentencing Error by
> using a "Constructively Amended Indictment" to dramatically enhance Garcia's
> Sentence by a mere preponderance of the evidence low [sic] standard of proof, for
> charges that were <u>NOT</u> stated in Garcia's Indictment & NOT proven or found
> beyond a reasonable doubt by a jury, judge or government, violates the Fifth
> Amendment's Due Process & Sixth Amendment's Jury Trial Right, & both the
> 5th & 6th Amendment's indictment & notice clauses, which are "ELEMENTS OF
> A CRIME" and NOT "Sentencing Factors" specifically the 10 Offense Level
> Enhancements & DRUG QUANTITY enhancements . . . violated Garcia's
> substantial rights."

(Am. § 2255 Mot. at PageID 98, *Sanchez v. United States*, No. 2:13-cv-02154-JPM-tmp (W.D.

Tenn.), ECF No. 10; *see also* Mem. of Law in Supp. of Claim 2 in Am. § 2255 Mot., *id.*, ECF

No. 10-1.) Sanchez claims the issue was not raised at the sentencing hearing and on direct

appeal because his attorneys were ineffective.  (Am. § 2255 Mot. at PageID 100, *id.*, ECF No.

10.)

The Sixth Amendment does not require that the facts used to enhance a defendant's

sentence must be stated in the indictment and proven beyond a reasonable doubt.  As the Sixth

Circuit has explained:

> On appeal, Bustos challenges the following findings by the district court:
> (1) that he was responsible for 119.07 kilograms of marijuana (this total includes
> the cocaine, *see* USSG § 2D1.1 Drug Equivalency Tables); and (2) that he had
> obstructed justice by physically assaulting Delgado in prison in order to
> intimidate him and prevent him from cooperating with authorities.  The finding of
> the specific drug quantity resulted in an increase in Bustos's base offense level,
> from 12 to 26, under USSG § 2D1.1(c)(7) and the finding of obstruction of justice
> under USSG § 3C1.1 resulted in both a two-point enhancement to Bustos's
> sentence along with rendering him ineligible for a two-point reduction for
> acceptance of responsibility.  Bustos claims that these factual findings by the
> district court violated the principles set out in *United States v. Booker*, 543 U.S.
> 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), since they were neither found by a
> jury nor admitted by him.
>
> Despite Bustos's claims of judicial fact-finding, the Supreme Court stated
> in *Booker* that the Sixth Amendment would not be implicated where the
> Guidelines were merely advisory.  543 U.S. at 233, 125 S. Ct. 738.  As the Court
> stated, "when a trial judge exercises his discretion to select a specific sentence
> within a defined range, the defendant has no right to a jury determination of the
> facts that the judge deems relevant."  *Id.*  Moreover, this court has repeatedly
> noted that "*Booker* did not eliminate judicial fact-finding in sentencing in cases
> where a defendant plead[s] guilty."  *United States v. Williams*, 411 F.3d 675, 678
> (6th Cir. 2005).  In this case, the district court clearly recognized that the
> Guidelines were only advisory.  Bustos acknowledged in both his petition to enter
> a plea of guilty and his plea hearing that under 21 U.S.C. § 841(b)(1)(C) the
> statutory maximum for the charge under Count One was up to 30 years in prison.
> Based upon *Booker*, any judicial fact-finding within that legislatively-mandated
> range does not implicate the Sixth Amendment.  *See* 543 U.S. at 233, 125 S. Ct.
> 738.

*United States v. Bustos*, 186 F. App'x 551, 553 (6th Cir. 2006) (alteration in original); *see also*

*United States v. Goward*, 315 F. App'x 544, 550 (6th Cir. 2009) ("The law in this Circuit, as it

now stands, does not preclude sentencing courts from finding facts using the preponderance of

the evidence standard. Moreover . . . , this Circuit holds that such judicial fact-finding does not implicate the Sixth Amendment so long as the sentence meted out is within the legislatively-mandated range." (citations omitted)).

Claim 2 is without merit and is DISMISSED.

\* \* \* \*

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's conviction and sentence are valid and, therefore, his § 2255 Motion is DENIED. Judgment shall be entered for the United States.

## IV.        APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

There can be no question that the issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Movant on the issues raised in his § 2255 Motion does not deserve attention, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED,

pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[9]

IT IS SO ORDERED this 2nd day of February, 2016.

/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[9] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.